RAY MOTOR LODGE, INC., AND EUNICE RICE, APPELLANTS, *v.* SUSAN SHATZ, FORMERLY KNOWN AS SUSAN SHAW, RESPONDENT.

No. 4667

March 9, 1964                    390 P.2d 42

*McNamee, McNamee & Rittenhouse,* of Las Vegas, for Appellants.

*Dickerson & Miles,* of Las Vegas, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

The appeal is from a judgment directing Ray Motor Lodge, Inc. and Rice to specifically perform their agreement to sell certain real property to Shatz. The appellants (sellers) seek a reversal on two grounds. First, they assert that the record shows no more than preliminary negotiations for a sale rather than an enforcible contract; second, that the requirements of NRS

111.210 (1) were not met.[1] We find no merit in either of these contentions, and affirm the judgment entered.

The first ground for reversal (that the record shows no more than preliminary negotiations for a sale) is merely an attempt to have us substitute the appellants' construction of the facts for the meaning given them by the trial judge. Of course we cannot do this. The finding by the trial court that there was an agreement to sell, finds ample support in the evidence. We shall relate some of it to show that this is true. Several months before November 2, 1961 Shatz (buyer) telephoned Winkenwerder (president and sole owner of Ray Motor Lodge, Inc.), inquiring about the property. By letter dated November 2, 1961, Winkenwerder described the property, advised Shatz that it was jointly owned by Ray Motor Lodge, Inc. and Rice, that an appraisal should be obtained, and that he was open for offers. Following receipt of that letter, Shatz had the property appraised. The appraiser notified Winkenwerder that its value was about $500 to $550 an acre. Sometime between November 2 and November 19 Shatz telephoned Winkenwerder. Each, in relating the substance of that conversation, testified that they agreed upon a total price of $18,000 ($600 an acre for 30 acres), $8,000 down and the balance at $150 a month. Winkenwerder made it clear that the deal was subject to the approval of his coowner Rice.

On November 19, 1961 Winkenwerder again wrote Shatz: "I have been waiting to hear from my partner in Chicago but seems as though she must be out of town for and until after Thanksgiving—so by this weekend I should have her answer, and then I can let you know for sure. I believe it will be alright with her and still I will have to get her OK—so just bear with me for a little while—OK."

---

[1]NRS 111.210(1) reads: "Every contract for the leasing for a longer period than 1 year, or for the sale of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the party by whom the lease or sale is to be made."

Finally on December 9, 1961 Winkenwerder wrote Shatz, stating, inter alia: "Mrs. Rice and I will accept the $600 per acre for the land or a total of $18,000. Total price to be $18,000.00, less cash down pay't 8,000.00, $10,000.00, Bal. $150.00 per month including 6% interest until paid. Interest to be applied first, and balance to principal. This payment to be split between Mrs. Rice and myself—$75.00 to each. First mortgage or trust deed covering the balance." The letter was signed by Winkenwerder for Ray Motor Lodge, Inc. and Mrs. Eunice Rice.[2]

Upon receipt of this letter Shatz had escrow instructions drawn and mailed to Winkenwerder. They were not acceptable because of a provision for annual payments of $1800 (instead of monthly payments of $150). Also, the instructions included a 2½ acre release clause (i.e., a provision for the reconveyance of 2½ acre parcels of the encumbered property as certain portions of the total purchase price were paid) which had not been previously agreed upon. Winkenwerder then notified his lawyer that he would not sign the escrow instructions because "the terms are not according to the original offer and final acceptance by me and Mrs. Rice." As a result, new escrow instructions were prepared, providing for monthly payments of $150 and deleting the 2½ acre release clause. Winkenwerder also refused to sign these, and this litigation ensued.[3] On this evidence alone the

---

[2]On appeal the sellers contend that the record does not show a written authorization from Rice to Winkenwerder empowering him to act. NRS 111.210(2). This is true. However, the sellers did not plead that part of the statute of frauds as an affirmative defense as required by NRCP 8(c), nor did they object to evidence offered to prove the agency and the authority to bind the principal. They may not now question either. Coray v. Hom, 80 Nev. 39, 389 P.2d 76; Chisholm v. Redfield, 75 Nev. 502, 347 P.2d 523.

[3]The sellers urge that the December 9 letter was an "offer" (though using words of acceptance) which was rejected when the buyer submitted the first escrow instructions which deviated therefrom. The court was fully justified in concluding otherwise, i.e., that the escrow instructions were drawn after the agreement was made and did not affect its terms or validity.

trial court was clearly justified in concluding that the understanding reached by Shatz and Winkerwerder during their telephone conference was reduced by Winkenwerder to writing (letter of December 9, 1961), and that such letter was not only an acceptance by Winkenwerder but by his coowner Rice as well.

We turn now to discuss the second basis for appeal— the statute of frauds. NRS 111.210(1). Reference to this portion of the statute of frauds was pleaded affirmatively in defense. The sellers claim that the December 9 letter is an insufficient memorandum of an oral contract to sell land because it does not contain a description of the property to be sold.[4] Of course whether the "writing" required by the statute is legally sufficient presents a question of law. The relevant parts of the letter have heretofore been quoted. But for the absence of a description it is otherwise definite and certain as to essential terms. Their claim of error in this regard would be good were it not for the first letter written by Winkenwerder to Shatz dated November 2, 1961 in which he particularly described the property and suggested that an appraisal be obtained. The description: "It's about 1,000 feet on L.A. 91: legal is: SE$\frac{1}{2}$, SE$\frac{1}{4}$, NE$\frac{1}{4}$ Sec. 20–22–61 20 acres; S$\frac{1}{2}$, N$\frac{1}{2}$, SE$\frac{1}{4}$ NE$\frac{1}{4}$ Sec. 20–22–61 10 acres." The description is more than sufficient. Compare: Johnson v. Watson, 70 Nev. 443, 272 P.2d 580 (where a description by street and number was found sufficient); Roberts v. Hummel, 69 Nev. 154, 243 P.2d 248 (where the property was described as "part of Trout Creek ranch located approximately 17 miles north of Jungo," and held to be adequate).

Of course a "note or memorandum" may satisfy the statute even though it consists of separate writings. 2

---

[4]The sellers also urge that the parties negotiated for the sale of 30 acres, but at trial it developed that only 25 acres were included. We find no proof of an acreage discrepancy. To the contrary. Counsel stipulated that 30 acres were involved, and other evidence shows this to be the fact.

Corbin, Contracts § 512. Indeed we have heretofore permitted separate writings to be considered together, even though one of them was not signed by the party to be charged, and neither was a sufficient memorandum in itself. Haspray v. Pasarelli, 79 Nev. 203, 380 P.2d 919; Shell Eastern Oil Petroleum Products v. White, 62 App. D.C. 332, 68 F.2d 379; Annot., 81 A.L.R.2d 991; cf. Bowker v. Goodwin, 7 Nev. 135. The missing description in the letter of December 9, 1961 is supplied by the letter of November 2, 1961, which formed a part of the entire transaction. We conclude that the two letters, considered together, satisfy the statute of frauds, NRS 111.210(1). All essential terms of an enforcible contract for the sale of land are stated therein.

One additional comment. The sellers also contend that the writings were incomplete because no mention was made of title insurance and whose obligation it was to pay for the policy. It is patent that such a provision is not essential to the creation of an enforcible contract to sell land. The judgment is affirmed.

BADT, C. J., and BREEN, D. J., concur.

McNAMEE, J., having disqualified himself, the Governor designated Honorable Peter Breen, Judge of the Fifth Judicial District Court, to sit in his place and stead.