FREDA LEGGETT, Appellant, *v.* THE ESTATE OF SIDNEY LEGGETT, and J. BRICE LEGGETT, the Executor Thereof, Respondents.

No. 6549

FREDA LEGGETT, Appellant, *v.* J. BRICE LEGGETT, Executor of the Estate of SIDNEY LEGGETT, Deceased, J. BRICE LEGGETT and LESLIE A. LEGGETT, Respondents.

No. 6627

March 1, 1972                    494 P.2d 554

*Sylvia J. Thompson, Joseph J. Kay, Jr.,* of Reno; *Cartwright, Saroyan, Martin & Sucherman, Inc.,* of San Francisco, California, for Appellant.

*Leslie A. Leggett,* of Reno, for Respondents.

## OPINION

By the Court, BATJER, J.:

These two cases were consolidated for the purpose of appeal because the same legal issues are involved in each.

Freda Leggett, appellant, and Sidney Leggett were married in Virginia City, Nevada in 1930. At the time of the marriage Sidney Leggett had two children by a previous marriage, J. Brice Leggett and Leslie A. Leggett, who are the respondents in this action. Early in 1964 Sidney Leggett filed an action for divorce. On July 1, 1964, while that divorce action was pending he executed a will devising and bequeathing all of his separate property and his share of the community property to the respondents. Four months after the will was executed a final judgment and decree of divorce was entered granting a divorce and dividing the property between the parties. The appellant was awarded a motel and a trailer park, and Sidney Leggett was awarded two motels, an industrial lot and the family residence. The divorced parties executed the documents

necessary for compliance with the judgment of the court, each taking title to the property awarded as his and her sole and separate property.

On December 31, 1964, approximately one month after the decree of divorce was entered, the parties remarried. The appellant and Sidney Leggett then remained married until Sidney Leggett's death on July 2, 1969.

Respondent J. Brice Leggett filed a petition for probate of the decedent's will on August 1, 1969, and the will was admitted to probate two weeks later. The appellant then filed a petition in that probate proceeding asserting that the decedent's will had been revoked as to her by their subsequent marriage and that she was entitled to take from the decedent's estate according the laws of intestacy, and that the property owned by the decedent at his death was community in nature. The district court entered an order finding that the will was valid inasmuch as the appellant had been "mentioned" and intentionally disinherited by the decedent, and that the property possessed by the decedent at his death was his sole and separate property.

The appellant, apparently questioning the jurisdiction of the district court to make the above determination regarding the validity of the will and the character of decedent's property within the probate proceedings, filed an action for declaratory relief in the district court before the order in the probate proceeding was entered. This action for declaratory relief requested the district court to determine whether the decedent's will was revoked by his subsequent remarriage, and whether or not any community property existed in the decedent's estate. The appellant subsequently filed a motion for summary judgment alleging that no triable issues of fact existed regarding the validity of the decedent's will. This motion was denied and, upon the court's invitation, the respondents filed a motion for summary judgment alleging that no triable issues of fact existed regarding the validity of the will and the nature of the decedent's property. The respondents' motion for summary judgment was granted, and this appeal is taken from that order and the one entered in the probate proceeding.

The decedent, in the distributive clause of his will, provided: "I give, devise and bequeath all my separate property and my proportionate part of and interest in the community property of myself and my wife, Freda Leggett, to my two sons, J. Brice Leggett and Leslie A. Leggett, share and share alike." The appellant admits that she was mentioned in the will, but she urges this court to adopt the rule announced in **In Re**

Poisl's Estate, 280 P.2d 789 (Cal. 1955), which provides for revocation in situations where an after-acquired spouse is mentioned in the will but the testator has failed to indicate on the face of his will that he contemplates a relationship of marriage with the after-acquired spouse. In construing a statute nearly identical to NRS 133.110, the California Supreme Court has reasoned that public policy requires a testator to bear in mind the possibility of a subsequent marriage and the serious changes in domestic relations resulting therefrom. In Re Poisl's Estate, supra; In Re Axelrod's Estate, 147 P.2d 1 (Cal. 1944). On the other hand, the respondents contend that the appellant was not only mentioned in the will but was mentioned in such a way as to show an intention not to make any provision for her and, as a consequence the will is valid as to her.

At common law, a revocation of a will, because of a subsequent change in the marital status of a person making the will, was based upon an implied intention. See 2 Page on Wills (Bowe-Parker Revision, § 21.86 et seq.). In Nevada the doctrine of implied revocation has been superseded by a statutory presumption of revocation. NRS 133.110 provides for the presumptive revocation of a will if the testator marries after executing his will and his spouse survives him, unless he has provided for the surviving spouse by marriage contract, by provision in the will, or has mentioned her in such a way as to show an intention not to provide for her.[1] Although recognizing that the policy underlying the California rule of social disfavor toward a testator's failure to provide for his surviving spouse is sound, we will not engraft, by judicial legislation, additional requirements upon the clear and unambiguous provisions of NRS 133.110. The sole purpose of that statute is to guard against the unintentional disinheritance of the surviving spouse.

Here the appellant was mentioned specifically by name and status in the distributive clause of Sidney Leggett's will that disposed of all of his property to his two sons. The testator had her in mind and did not forget her or overlook her. At the time he executed the will he did not unintentionally disinherit her for he intended to give her nothing. See In Re Drown's Estate, 372 P.2d 196 (Wash. 1962); In Re Steele's Estate, 273 P.2d

---

[1]NRS 133.110: "If a person marries after making a will and the spouse survives the maker, the will is revoked as to the spouse, unless provision has been made for the spouse by marriage contract, or unless the spouse is provided for in the will, or in such a way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation shall be received."

235 (Wash. 1954); cf. Perkins v. Brown, 27 So.2d 521 (Fla. 1946).

Until such time as our legislature deems it advisable to revise NRS 133.110, we hold that to prevent revocation a spouse must merely be mentioned in such a way as to show an intention not to make any provision for that person.

The rule of In Re Poisl's Estate, supra, requiring that contemplation of future marriage must appear on the face of the will to prevent revocation as to the person mentioned cannot logically be applied to the facts in this case. It would be ridiculous to hold that Sidney Leggett, in order to insure against revocation of his will, was required not only to mention Freda Leggett in such a way as to show an intention not to make provision for her, but also to provide, on the face of the will, that he contemplated a future marriage with her although he was in the process of obtaining a divorce from her.

Pursuant to the provisions of NRS 133.110, the only evidence admissible to rebut the presumption of revocation is evidence showing that (1) provision has been made for the spouse by marriage contract, (2) a provision for the spouse has been made in the will, or (3) the spouse has been mentioned in the will in such a way as to show an intention not to make such provision. The appellant claims that the trial court erred in receiving evidence regarding the terms and conditions of the divorce decree, the manner in which the parties treated their own property subsequent to the remarriage and the alleged intent of the testator in not executing a new will after the divorced parties were remarried. It is also asserted by the appellant that the trial court erred in refusing to allow her to introduce evidence regarding the decedent's lack of communication with his sons, which evidence might tend to show that she was unintentionally disinherited. Much of the extrinsic evidence admitted into evidence bore upon the question of the existence of community property and for that purpose it is admissible. Furthermore, the order entered by the district judge makes it clear that he relied solely upon the will itself and not upon any extrinsic evidence when determining that the will upon its face showed an intentional disinheritance of the appellant. In any event the district court reached the correct result. Wyatt v. State, 86 Nev. 294, 468 P.2d 338 (1970).

The lower court granted the respondents' motion for summary judgment and held that the will was not revoked and that

no community property was owned by the decedent at his death. Appellant contends that the granting of summary judgment was improper because genuine issues of fact remained undecided, among which were the legal characterization of the assets held by the decedent at his death, and whether or not any community property existed by reason of the labors and efforts of the parties during the remarriage. After receiving oral and documentary evidence, the trial court determined that the property awarded each spouse by the divorce decree became the separate property of each, that separate accounts relative to these properties were maintained during the subsequent marriage and that these properties and the rents, issues and profits therefrom were readily identifiable at the date of decedent's death. Throughout all of the proceedings in the lower court the appellant failed to give any indication of what property held by the decedent at his death must be characterized as community property. Although all inferences must be drawn in favor of Freda Leggett, against whom the order was entered, nevertheless she was required to point out to the district court something indicating the existence of a triable issue of fact. This she failed to do. She was not entitled to have the motion for summary judgment denied on the mere hope that at trial she might be able to discredit the movants' evidence. Bair v. Berry, 86 Nev. 26, 464 P.2d 469 (1970); Thomas v. Bokelman, 86 Nev. 10, 462 P.2d 1020 (1970). Nothing appears in the record to indicate the existence of a genuine issue of material fact, and for that reason the trial court acted properly in granting summary judgment. Polk v. MacMillan, 87 Nev. 526, 490 P.2d 218 (1971).

Affirmed.

MOWBRAY and THOMPSON, JJ., concur.

GUNDERSON, J., concurring:

This was not a case involving a deceased who simply "marries after making a will," as NRS 133.110 envisions. Here, the deceased made a will while obtaining a divorce that settled the parties' property rights, then remarried the same woman. It seems evident to me that our legislature did not intend to deal with such a situation when it promulgated NRS 133.110; thus, I would simply hold the statute inapplicable to the case at bar. Cf. Perkins v. Brown, 27 So.2d 521 (Fla. 1946).

The assumption that NRS 133.110 applies mechanically to any situation where a testator "marries," including any where he divorces and remarries, requires the majority to avoid injustice in this case by concluding that "to prevent revocation a

spouse must merely be mentioned in such a way as to show an intention not to make any provision for that person," even in situations where the will is not made in contemplation of marriage. These departures from what I conceive to be sound law may, I believe, cause injustice in future cases.

For example, in the case before us, were it not for the fortuitous fact that the majority is able to determine Freda Leggett was "mentioned in such a way as to show an intention not to make any provision for her," the majority's pronouncements would allow her recovery although Mrs. Leggett received a property settlement in the divorce, and remarriage left her situated as she was when the will was executed. Again, under the majority's pronouncements, NRS 133.110 will not operate, as it should, to protect pretermitted wives I believe our legislature must surely have intended to protect, e.g. women who, before any marriage, are mentioned but not substantially provided for in wills executed by men they later marry. Cf. In Re Poisl's Estate, 280 P.2d 789 (Cal. 1955).

ZENOFF, C. J., concurs.