*1027
 
 OPINION
 

 Per Curiam:
 

 Appellants Edwards Heat Treating Services (“EHT”), Edwards Industries (“El”) and Mark Edwards
 
 [1]
 
 sued respondent DTE/BTE, Inc. for breach of two oral agreements — an equipment lease and a premises lease. DTE/BTE invoked the statute of frauds as a defense to enforcement of both leases. The parties stipulated to a bench trial that would be conducted in summary fashion, with each side presenting one witness. After trial, the district court found that appellants had failed to meet their burden of proof, and entered judgment for DTE/BTE. The district court also awarded DTE/BTE $49,192.70 in attorney’s fees and costs on the ground that appellants had failed to obtain a judgment more favorable than the offer of judgment made by DTE/BTE.
 

 Although the statute of frauds barred enforcement of the oral agreements, we conclude that the district court erred in failing to award appellants damages for past due rents. We further conclude that the award of attorney’s fees and costs was improper, as it was based on an invalid, unapportioned joint offer of judgment. Accordingly, we affirm that part of the district court’s judgment rejecting appellants’ claims for prospective damages, vacate the district court’s award of attorney’s fees and costs to DTE/BTE, and remand the case to the district court to determine appellants’ damages for past due rents.
 

 FACTS
 

 On July 20, 1989, appellants filed a complaint against DTE/ BTE alleging: (1) breach of two oral lease agreements; (2) bad
 
 *1028
 
 faith breach of the implied covenant of good faith and fair dealing; and (3) abuse of process. By amendment, the complaint dropped all but the first claim for breach of lease agreements, and added four defendants. On May 24, 1993, the district court approved the parties’ stipulation to bifurcate the trial and to try the underlying action between appellants and DTE/BTE in summary fashion, with each side presenting one witness. A bench trial commenced on June 1, 1993, and the following testimony was presented by Edwards on behalf of appellants, and Cherie Humphreys on behalf of DTE/BTE.
 

 In 1970, Edwards formed El to develop and market a wide-area paging network which would integrate a variety of services, including paging, voice mail, two-way radio and answering services. By 1987, most of the network was up or under construction.
 

 In 1986, Humphreys and Allen Harsh formed a company eventually known as DTE/BTE to sell El’s products and services. During 1987, Edwards and Humphreys began discussing the prospect of Humphreys starting a new company that would provide the answering service aspect of El’s network. Edwards provided Humphreys with information regarding the type of equipment she would need to operate an answering service and assisted her in preparing a prospectus.
 
 [2]
 

 According to Humphreys, Edwards represented that DTE/BTE would need a TASCOM,
 
 [3]
 
 an uninterrupted power supply (“U.P.S.”), and a diesel generator to operate the system. He further advised her that this equipment would cost $125,000. Humphreys unsuccessfully tried to obtain bank financing.
 

 At some point in early 1988, EHT
 
 [4]
 
 agreed to purchase the necessary equipment and lease it to DTE/BTE. Edwards reportedly told Humphreys about previous financing he had obtained for a project from EHT’s profit-sharing plan, and suggested that Humphreys contact EHT as a funding source. Humphreys thereafter contacted EHT and reached an agreement for funding. According to Humphreys, Edwards arranged the financing and she was unaware of the source of the funds until late February or March. Humphreys claims that she had never dealt with William Edwards or negotiated with him regarding the equipment. In February 1988, EHT issued a check to El for $125,000, which El used to purchase the equipment.
 

 El’s attorney, Mark Gunderson, prepared an equipment lease in March 1988. The terms of the lease provided that DTE/BTE
 
 *1029
 
 would make monthly payments of $2,942 for a period of 60 months (5 years), and at the end of the term DTE/BTE could purchase the equipment for a total purchase price of $8,000. Humphreys, however, refused to sign the lease unless Edwards provided an accounting of the demised equipment and the cost of its acquisition. According to Humphreys, Edwards never provided the accounting.
 
 [5]
 
 Although Humphreys never signed a written equipment lease, from April 1988 through January 1989 DTE/BTE made 10 lease payments totalling approximately $30,000.
 

 During February 1988, El and DTE/BTE also began negotiating for DTE/BTE to sublease office space from El.
 
 [6]
 
 Gunderson prepared several premises leases. The draft leases provided that DTE/BTE would pay $800 per month in rent and a pro-rata share of the utilities for a term of five years. However, Humphreys refused to sign a lease until a copy of El’s master lease with Dermody Properties was attached. Humphreys wanted the master lease because DTE/BTE was to pay a pro-rated amount of El’s rental payments to Dermody Properties and she was concerned that DTE/BTE was being overcharged.
 
 [7]
 
 Although DTE/BTE moved into the upstairs office space and began paying rent, a written lease was never signed.
 

 On March 2, 1989, Edwards terminated both the equipment and premises leases by letter. According to Edwards, he wrote the letter after he and Humphreys had reached a settlement during discussions to “terminate” the arrangements. Edwards claims that Humphreys agreed “to pay us what was due and owing, pay for the modifications, pay for the equipment and they could go on about their business.” However, according to Humphreys, Edwards terminated the arrangements because DTE/BTE had become delinquent in making payments.
 
 [8]
 
 After receiving the termination letter, DTE/BTE stopped making payments. Humphreys further testified that when Edwards terminated the agreements, he informed her that DTE/BTE could not take the
 
 *1030
 
 equipment unless the full purchase price was paid. Humphreys tried, but was unable to obtain alternative financing because DTE/BTE could not get an extended warranty on the TASCOM.
 

 When DTE/BTE vacated the premises in April 1989, it had not paid rent for the months of February, March, and the period of its occupancy in April. In May 1992, Edwards removed the TASCOM and sold it for $16,600,
 
 [9]
 
 less a $2,500 brokerage fee.
 

 The district judge rendered his opinion from the bench, stating:
 

 In this case, because of the absence of a written agreement containing the essential terms both as to the equipment lease and as to the lease of premises, I might point out there’s no question there was no such agreement, there were many drafts prepared, but this is not a case in which there was a memorandum containing essential terms to which everyone agrees, and somehow as a result of negligence it wasn’t executed.
 

 There were drafts prepared and submitted and — by the plaintiff's and their counsel, and the defendant refused to sign them.
 

 But the absence of such a document really generates the fundamental problem in this case, and is the cause of the painful uncertainty which I’ve suffered the last three days.
 

 The district court then entered findings of fact and conclusions of law, finding that any agreements there may have been between the parties “were in fact oral agreements that had never been reduced to executed written agreements,” and that El and EHT had failed to carry their burden of proof. The judgment was entered on June 18, 1993.
 

 A number of post-judgment motions followed. Pursuant to NRS 18.020 and NRCP 68, DTE/BTE filed a motion for attorney’s fees and costs. Appellants filed a motion for a new trial, arguing that both the district court and appellants had misunderstood the stipulation such that the appellants were denied the opportunity to present rebuttal testimony.
 

 In an order dated August 2, 1993, the district court denied the motion for a new trial and granted the motion for attorney’s fees and costs. The latter order was amended to reflect that attorney’s fees and costs in the amount of $49,192.70, had been awarded based on NRCP 68.
 

 Appellants filed a supplemental motion for a new trial, arguing that new evidence had been disclosed which would have supported an action for fraud against DTE/BTE and would have
 
 *1031
 
 caused them to oppose bifurcation of the cases. The district court denied the motion and certified the judgment; this appeal followed.
 

 DISCUSSION
 

 As this court has stated on numerous occasions, findings of fact and conclusions of law, supported by substantial evidence, will not be set aside unless clearly erroneous.
 
 See, e.g.,
 
 Trident Constr. Corp. v. West Elec., Inc., 105 Nev. 523, 426, 776 P.2d 1239, 1241 (1989). Additionally, “[w]here the trial court, sitting without a jury, makes a determination predicated upon conflicting evidence, that determination will not be disturbed on appeal where supported by substantial evidence.”
 
 Id.
 
 at 427, 776 P.2d at 1241.
 

 The premises
 

 During trial, El stipulated to forgo its claim for prospective damages under the oral premises lease. Therefore, the only issue on appeal with respect to that lease is whether the district court erred when it failed to award El damages for unpaid rent for the months of February, March, and the period of DTE/BTE’s occupancy during April 1992. In this respect, El argues that DTE/ BTE’s conduct in occupying the premises and paying rent on a monthly basis created a month-to-month tenancy that supported El’s claims for unpaid rents. We agree.
 

 NRS 118A.210 provides, in relevant part:
 

 2. Unless the rental agreement establishes a definite term, the tenancy is from week to week in the case of a tenant who pays weekly rent and in all other cases the tenancy is from month to month.
 

 3. In the absence of an agreement, either written or oral:
 

 (a) Rent is payable at the beginning of the tenancy; and
 

 (b) Rent for the use and occupancy of a dwelling is the fair rental value for the use and occupancy.
 

 Despite the lack of an enforceable premises lease, DTE/BTE was obligated to pay rent for the use and occupancy of EI’s office space.
 

 The equipment
 

 As an initial matter, the parties disagree as to the basis for the district court’s ruling with respect to the alleged equipment agreement. EHT claims that the district court did not base its decision on the statute of frauds. DTE/BTE contends that the district court
 
 *1032
 
 refused to enforce the agreement based upon the statute of frauds. After reviewing both the district court’s opinion from the bench and the written findings of fact and conclusions of law, we conclude that the district court did rely on the statute of frauds to preclude enforcement of the oral equipment agreement. We now consider whether the district court erred in its ruling.
 

 The' statute of frauds precludes enforcement of the oral equipment lease because, by its terms, it could not be performed within one year.
 
 See
 
 NRS 111.220(1).
 
 [10]
 
 EHT asserts that the equipment agreement was taken out of the statute of frauds by any of the following: (1) admissions; (2) full performance; or (3) writings or memoranda of the agreement sufficient to meet the statute of frauds. We disagree.
 

 “A complete admission in court by the party to be charged should dispense with the necessity of any writing whatever.” 2 Arthur L. Corbin,
 
 Corbin on Contracts
 
 § 498, at 683 (1950). After reviewing the record, we conclude that Humphreys did not make a complete admission that would dispense with the necessity of any writing. Although it appears that both parties intended to enter into an agreement, the primary reason Humphreys refused to sign the proffered equipment lease related to a dispute over whether DTE/BTE had in fact received, and needed, $125,000 worth of equipment. This dispute goes to the essence of the agreement.
 

 Full performance by one party may also remove a contract from the statute of frauds. 2 Corbin,
 
 supra,
 
 § 457. Although EHT tendered a check to El (February 28, 1988), and Edwards then purchased the equipment (March 1, 1988), this all antedated the alleged transaction between EHT and DTE/BTE (March 15, 1988). Therefore, EHT actually performed before there was any agreement. It would be inappropriate to hold DTE/BTE to an alleged agreement they never actually consummated merely because EHT improvidently purchased the equipment without a written agreement.
 

 EHT produced four documents which it contends are sufficient memoranda of the equipment agreement between EHT and DTE/ BTE. Separate writings may be considered together to establish a
 
 *1033
 
 sufficient writing or memorandum, “even though one of them was not signed by the party to be charged, and neither was a sufficient memorandum in itself.” Ray Motor Lodge, Inc. v. Shatz, 80 Nev. 114, 118-19, 390 P.2d 42, 44 (1964). Whether a writing is legally sufficient to comply with the statute of frauds presents a question of law.
 
 Id.
 

 Having reviewed each of the documents, we conclude that they are not sufficient memoranda of the agreement, either individually or collectively. As to two of the documents, the “Private Placement Memorandum” and the “Proposal and Business Plan,” there was conflicting testimony as to who prepared the documents. Additionally, the latter document merely indicates that DTE/BTE needed to finance some equipment that would cost approximately $125,000 — it does not establish any of the terms or promises in the alleged agreement. Finally, the letter from Humphreys to EHT does not establish the consequence of a single default or establish DTE/BTE’s liability for the entire amount in dispute.
 

 EHT also argues that DTE/BTE was estopped from raising the statute of frauds as a defense because EHT relied on DTE/BTE’s representations that a written lease would be signed and that the $125,000 would be repaid when it decided to purchase equipment for which it had no other need.
 

 In Zunino v. Paramore, 83 Nev. 506, 509, 435 P.2d 196, 197 (1967), this court set forth the elements of equitable estoppel:
 

 To constitute estoppel the party relying on it must be influenced by the acts or silence of the other and it must appear that the acts or conduct of the party estopped caused the party relying to act as he would not have acted or he cannot complain that he was deceived to his prejudice.
 

 (Citations omitted.) A promise to execute a written agreement, without proof of fraud, is insufficient to invoke estoppel against the use of the statute of frauds as a defense.
 
 See
 
 Harmon v. Tanner Motor Tours of Nevada, Ltd., 79 Nev. 4, 16, 377 P.2d 622, 628 (1963). Similarly, this court has recognized that part performance, standing alone, is insufficient to make the statute inapplicable.
 
 Id.
 
 However, this court has held that where both circumstances are present, estoppel is properly invoked.
 
 Id.
 
 Finally, “[ejstoppel or part performance must be proved by some extraordinary measure or quantum of evidence.”
 
 Zunino,
 
 83 Nev. at 509, 435 P.2d at 197.
 

 The primary problem with EHT’s estoppel or part performance
 
 *1034
 
 argument is the conflicting testimony regarding who negotiated the amount and terms of the agreement. It is also complicated by the unusual timing of events: EHT provided the check and El/ Edwards purchased the equipment before the alleged deal with DTE/BTE. Because of the conflicting testimony and the district court’s ability to weigh the evidence and the credibility of the two witnesses, we decline to disturb the district court’s ruling.
 
 See Trident,
 
 105 Nev. at 427, 776 P.2d at 1242.
 

 Although we have determined that the district court correctly applied the statute of frauds, we are nevertheless convinced that the district court erred when it failed to award damages to EHT for the past due rent for the equipment. Regardless of Humphreys concerns regarding the long-term lease and the amount DTE/BTE was being charged, DTE/BTE used the equipment from April 1988 through mid-April 1989; however, DTE/BTE only made ten payments totalling approximately $30,000. It would be unjust to allow DTE/BTE to enjoy the benefit of the use of the equipment without paying rent merely because the long-term agreement was found to be unenforceable.
 

 Attorney’s fees and costs
 

 The trial court awarded attorney’s fees and costs to DTE/BTE based upon NRCP 68.
 
 [11]
 
 Since, upon remand, the trial court may award damages for past due rents in an amount less than the offer of judgment,
 
 [12]
 
 it is necessary to address appellants’ contention that attorney’s fees and costs could not be awarded pursuant to NRCP 68 because the offer of judgment was invalid.
 

 “This court has twice held that unapportioned joint offers of judgment are invalid for the purposes of NRCP 68.” Bergmann v. Boyce, 109 Nev. 670, 677, 856 P.2d 560, 564-65 (1993) (citing Morgan v. Demille, 106 Nev. 671, 799 P.2d 561 (1990); and Ramadanis v. Stupak, 104 Nev. 57, 752 P.2d 767 (1988)). An unapportioned joint offer is improper because it denies the offeree an opportunity to meaningfully weigh the possibility of obtaining a more favorable judgment against the possibility of obtaining a less favorable judgment and having to pay attorney’s fees and costs.
 
 Id.
 
 at 678, 856 P.2d at 565.
 

 DTE/BTE contends that the offer of judgment was joint in
 
 *1035
 
 name only because appellants acted jointly throughout the case, similar to Uniroyal Goodrich Tire Co. v. Mercer, 111 Nev. 318, 890 P.2d 785 (1995). In
 
 Uniroyal,
 
 the plaintiff made an offer of judgment to “Defendant Uniroyal Goodrich Tire Company and Uniroyal, Ltd.” Ill Nev. 322, 890 P.2d at 788. In holding that the offer was “joint in name only,” this court made the following observations:
 

 Even though there is more than one named defendant in the complaint, counsel for the Uniroyal companies stipulated that any judgment would be paid by Uniroyal Goodrich Tire Company, Inc., an American corporation.
 
 There was no separate liability or basis of liability,
 
 and therefore the Uniroyal counsel was in a position to assess the risk appropriately.
 

 Id.
 
 at 322-23, 890 P.2d at 788 (emphasis added).
 

 Uniroyal
 
 is distinguishable from the case at bar. Here, appellants are not affiliated. Additionally, appellants submitted separate offers of judgment to DTE/BTE, further indicating that the parties were asserting separate claims. Finally, even assuming that Edwards was acting as an agent for both El and EHT, that does not change the fact that they sought recovery under separate oral agreements with DTE/BTE.
 
 [13]
 
 It was entirely possible that one would have a stronger case than the other and, as such, the unapportioned joint offer denied El, EHT, or their alleged agent the opportunity to weigh their individual chances for a more favorable judgment. Therefore, we conclude that the offer of judgment was invalid and could not provide an appropriate basis for the award of attorney’s fees and costs against appellants. Accordingly, if DTE/BTE seeks attorney’s fees and costs on remand, the offer of judgment cannot be used as a basis for an award.
 

 Motion for new trial
 

 A new trial may be granted pursuant to NRCP 59(a) where an aggrieved party’s substantial rights have been materially affected by any of the following:
 

 (1)
 
 Irregularity in the proceedings
 
 of the court, jury, master, or adverse party, or any order of the court, or master, or abuse of discretion
 
 by which either party was prevented from having a fair trial',
 
 ....
 

 
 *1036
 
 (3)
 
 Accident or surprise
 
 which ordinary prudence could not have guarded against; (4)
 
 Newly discovered evidence
 
 material for the party making the motion
 
 which he could not, with reasonable diligence, have discovered and produced at the trial
 
 ....
 

 (Emphasis added.) The decision to grant or deny a motion for a new trial rests within the sound discretion of the trial court, and this court will not disturb that decision absent palpable abuse. Southern Pac. Trans. Co. v. Fitzgerald, 94 Nev. 241, 244, 577 P.2d 1234, 1236 (1978).
 

 Appellants contend that the district court abused its discretion by denying their motion for a new trial. Appellants specify numerous circumstances which they argue operated cumulatively to materially affect their substantial rights: (1) prior to entering the stipulation
 
 [14]
 
 they were led to believe the district court would request additional testimony if necessary; (2) following Humphreys’ cross-examination, they were informed that rebuttal testimony would not be necessary; (3) they were surprised and unprepared to address testimony regarding Edwards’ alleged involvement as a director of DTE/BTE; (4) discovery violations by DTE/BTE inhibited their ability to rebut Humphreys’ trial testimony; (5) withheld documents affected their willingness to enter the stipulation; and (6) the district court may have been prejudiced against them during an ex parte communication with DTE/BTE just prior to trial.
 

 The first two allegations and the fifth allegation relate to appellants’ decision to bifurcate their claims against DTE/BTE from those against other defendants and to enter a stipulation concerning the method of trial. However, appellants never objected to anything in the stipulation, never asked that the stipulation be clarified, and, unlike DTE/BTE, never reserved the right to call rebuttal witnesses prior to trial. Moreover, at the conclusion of Humphreys’ cross-examination, appellants did not reserve the right to call rebuttal witnesses or request rebuttal testimony; therefore, appellants waived their right to raise the issue in a post-trial motion, or on appeal.
 
 See
 
 Fick v. Fick, 109 Nev. 458, 462, 851 P.2d 445, 448 (1993) (failure to object to
 
 *1037
 
 characterization of property as community barred subsequent review). Additionally, appellants failed to present any evidence showing they
 
 entered
 
 the stipulation through fraud, collusion, accident, or mistake.
 
 See
 
 Citicorp Servs., Inc. v. Lee, 99 Nev. 511, 513, 665 P.2d 265, 266 (1983). We also note that there is no record of the two conferences during which the appellants claim they were misled regarding the need for rebuttal witnesses.
 

 The third allegation is basically a challenge to the district court’s decision that evidence relating to Edwards’ involvement with DTE/BTE was probative and would be admitted over appellants’ objections. It is within the trial court’s discretion to determine probative value, and this court will not disturb that ruling absent an abuse of discretion.
 
 Uniroyal,
 
 111 Nev. at 321, 890 P.2d at 787. We discern nothing in the district court’s decision that constitutes an abuse of discretion.
 

 We further conclude that the documents allegedly withheld would not have changed the outcome of the mase. Therefore, appellants’ substantial rights were not violated.
 

 Finally, the last claim relates to an alleged ex parte meeting between the trial judge and DTE/BTE. There is no record of such a meeting. There is also nothing in the record to demonstrate bias or prejudice on the part of the trial judge against appellants.
 

 We therefore conclude that there is no basis for a new trial and that the district court did not abuse its discretion in denying appellants’ motion.
 

 CONCLUSION
 

 For the reasons discussed above, we affirm that part of the district court’s judgment denying prospective damages for the equipment agreement and the order denying the motion for a new trial. However, we remand the case for a determination of damages for past due rents for both the equipment and the premises. The award of attorney’s fees and costs to DTE/BTE is vacated.
 
 [15]
 

 [1]
 

 El, EHT and Edwards will be collectively referred to as “appellants” except when it is necessary to refer to Edwards individually.
 

 [2]
 

 There was conflicting testimony as to how much assistance Edwards provided in preparing the prospectus.
 

 [3]
 

 A TASCOM is a type of answering service system.
 

 [4]
 

 EHT is owned by William Edwards, Mark Edwards’ father.
 

 [5]
 

 Edwards testified that he did so in June 1988. However, he was unsure whether the accounting was ever attached to a lease and sent to DTE/BTE.
 

 [6]
 

 Prior to this time, Humphreys (operating as ACM) had used office space on the first floor of the building leased by El. Prior to April 1988, there was no rental agreement and it appears that ACM was not required to pay rent.
 

 [7]
 

 Edwards testified that DTE/BTE had requested certain renovations and that the $800 per month rent included $207.20 per month to cover the $12,432.46 that El had spent on the renovations. In contrast, Humphreys testified that she never requested any renovations and was never told that the rent would include an amortized amount for renovations.
 

 [8]
 

 Humphreys testified that DTE/BTE did not make the February payments because she “was being pressured to sign premises leases and equipment leases.”
 

 [9]
 

 Edwards was unable to obtain a higher purchase price because the TASCOM had become technologically obsolete by 1989.
 

 [10]
 

 We note that in 1989, the legislature adopted the UCC provisions regarding leases. NRS 104A.2101-104A.2532. The equipment transaction in this case, however, occurred prior to January 1, 1990 and is therefore governed by applicable laws in effect before that date. NRS 104A.200. Leases entered into after that date are subject to the statute of frauds provisions set forth in NRS 104A.2201.
 

 [11]
 

 Under NRCP 68, a trial court may award attorney’s fees and costs to a party who makes an offer of judgment “[i]f the judgment finally obtained by the offeree is not more favorable than the offer . . . .”
 

 [12]
 

 On December 3, 1991, DTE/BTE made an offer of judgment in the amount of $25,000.00 to satisfy all claims.
 

 [13]
 

 We note, however, that Edwards’ alleged agency relationship with both El and EHT would eliminate any claim that the offer of judgment was invalid because it was conditional.
 
 See Bergmann,
 
 109 Nev. at 678 n.5, 856 P.2d at 565 n.5.
 

 [14]
 

 The stipulation provided, in pertinent part:
 

 [T]he June 1, 1993 trial shall be conducted in summary fashion, with Mark Edwards testifying on behalf of Plaintiffs, and Cherie Humphreys testifying on behalf of Defendants. No other witnesses may be called to testify. Plaintiffs and Defendant DTE/BTE may further stipulate as to the method for trial . . . however, such stipulation shall be in writing and filed with the Court prior to June 1, 1993.
 

 [15]
 

 The Honorable Charles E. Springer, Justice, voluntarily recused himself from participation in the decision of this appeal.