IN THE MATTER OF THE ESTATE OF W.R. PRESTIE.

SCOTT PRESTIE, APPELLANT, v.
MARIA GASPER PRESTIE, RESPONDENT.

No. 43921

July 20, 2006                                    138 P.3d 520

*Cary Colt Payne*, Las Vegas, for Appellant.

*Gerrard Cox & Larsen* and *Jay R. Larsen* and *Gary C. Milne*, Henderson, for Respondent.

Before MAUPIN, GIBBONS and HARDESTY, JJ.

## OPINION

By the Court, HARDESTY, J.:

In this appeal, we consider whether an amendment to an inter vivos trust can rebut the presumption that a pour-over will is revoked as to an unintentionally omitted spouse. We conclude that the plain and unambiguous language of NRS 133.110 does not permit evidence of an amendment to an inter vivos trust to rebut the presumption of a will's revocation as to an unintentionally omitted spouse. Lastly, we conclude that the doctrine of equitable estoppel has no application to the facts of this case. Consequently, we affirm the district court's order revoking the will as to the respondent.

### FACTS

In 1987, California residents Maria and W.R. Prestie were married in Las Vegas, Nevada. Maria and W.R. were divorced two years later yet maintained an amiable relationship. W.R. was later diagnosed with macular degeneration and moved to Las Vegas, where he purchased a condominium. Maria also moved to Las Vegas, although she initially resided in a separate residence.

In 1994, W.R. simultaneously executed in California a pour-over will and the W.R. Prestie Living Trust (the inter vivos trust). The pour-over will devised W.R.'s entire estate to the trust. W.R.'s son, appellant Scott Prestie, was named both the trustee and a beneficiary of the inter vivos trust. Neither the will nor the inter vivos trust provided for Maria.

As W.R.'s sight worsened, Maria provided care for W.R. by taking him to his doctor appointments, cooking, and cleaning his condominium. In 2000, Maria moved into W.R.'s condominium to better assist him with his needs. In 2001, W.R. amended the inter vivos trust to grant Maria a life estate in his condominium upon his death.[1] A few weeks later, Maria and W.R. were married for a second time. W.R. passed away approximately nine months later.

Maria eventually petitioned the district court for, among other things, a one-half intestate succession share of W.R.'s estate on the ground that W.R.'s will was revoked as to her under NRS 133.110

---

[1]The amendment to the inter vivos trust was erroneously labeled a codicil. *See* NRS 132.070 (stating that a codicil is an addition to a will).

(revocation of a will by marriage). Specifically, Maria argued that because she married W.R. without entering into a marriage contract and after he had executed his will, the will was revoked as to her because it did not contain a provision providing for her or a provision expressing an intention to not provide for her.

The probate commissioner found that W.R.'s will was executed before he remarried Maria in 2001 and that the amendment granting Maria a life estate in the condominium was to the inter vivos trust, not to W.R.'s will. The probate commissioner also concluded that, under NRS 133.110, W.R. and Maria did not have a marriage contract and W.R.'s will did not provide for Maria or express an intent to not provide for Maria. Therefore, the probate commissioner recommended that W.R.'s will be revoked as to Maria. The district court subsequently entered an order adopting the probate commissioner's report and recommendations, and Scott Prestie appeals.

## DISCUSSION

On appeal, Scott makes four arguments in support of his contention that the district court erred in concluding that W.R.'s will was revoked as to Maria under NRS 133.110. Scott argues that (1) both W.R.'s will and the inter vivos trust mandate the application of California law, under which the result would have likely been different; (2) W.R.'s amendment to the inter vivos trust rebutted the presumption of revocation of W.R.'s will as to Maria; (3) NRS Title 13 should have barred Maria's claim as an unintentionally omitted spouse under NRS Title 12; and (4) Maria should have been equitably estopped from asserting her claim as an unintentionally omitted spouse because she was provided for by and through the amendment to the inter vivos trust.

### California law does not apply

Article Five, Section 3 of W.R.'s will states that ''[W.R.'s] estate may be administered under the California Independent Administration of Estates Act.'' Additionally, Article Four, Section 7(d) of the inter vivos trust states that ''[t]his Trust Agreement is a California contract and the validity of this Trust shall be determined by the laws of the State of California.'' Relying on these provisions, Scott argues that the district court erred in not applying California law, which he asserts defines ''estate'' as including the right to take pursuant to a will or revocable trust. We disagree.

First, California Independent Administration of Estates Act governs the probate process by permitting the appointment of a personal representative to administer a decedent's estate with lim-

ited court supervision.[2] Thus, Article Five, Section 3 of W.R.'s will is not a choice of law provision but rather, allows the California act to apply and for a personal representative to administer the estate. The administration of W.R.'s estate is not at issue in this case. Second, the word "may" contained in section 3 is permissive[3] and therefore, the application of California law with respect to the estate's administration was discretionary at best. Third, with respect to Article Four, Section 7(d) of the trust, the sole issue in this case is whether W.R.'s will is revoked as to Maria under NRS 133.110. The validity of the inter vivos trust has never been at issue. Thus, section 7(d) of the inter vivos trust is inapposite to the issue of whether W.R.'s will is revoked as to Maria. Consequently, we are not persuaded by Scott's argument that California law applies.

W.R. was domiciled and owned real property in Nevada; therefore Nevada law applies. This court has previously addressed its conflict of laws approach in estate matters:

> It is clear that the State wherein personal property is located has full power to administer such property. The State has a legitimate interest in requiring probate of property within its borders, to protect creditors. . . . Application of the usual conflict-of-law rule prevailing in such a situation would require that the personal property be distributed in accordance with the law of the decedent's domicile.[4]

Additionally, "[w]hether a will transfers an interest in land and the nature of the interest transferred are determined by the law that would be applied by the courts of the situs."[5] W.R. was domiciled in Nevada at the time of his death, and his condominium is located in Nevada. Thus, W.R.'s will and estate are governed by Nevada law.

*NRS 133.110—revocation of a will by marriage*

NRS 133.110 provides for surviving spouses who are unintentionally omitted from their spouse's will:

> If a person marries after making a will and the spouse survives the maker, the will is revoked as to the spouse, unless provision has been made for the spouse by marriage contract, or unless the spouse is provided for in the will, or in such a

---

[2]Cal. Prob. Code §§ 10400-10592 (1991).

[3]*Ewing v. Fahey*, 86 Nev. 604, 607, 472 P.2d 347, 349 (1970).

[4]*Voorhees v. Spencer*, 89 Nev. 1, 6-7, 504 P.2d 1321, 1324 (1973) (citation omitted).

[5]Restatement (Second) of Conflict of Laws § 239 (1971).

way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation shall be received.

Scott argues that W.R.'s amendment to the inter vivos trust, which gave Maria a life estate in W.R.'s condominium, means that Maria has been provided for under NRS 133.110. Moreover, Scott contends that W.R.'s amendment to the inter vivos trust rebuts the presumption of revocation under NRS 133.110. We disagree with both of these arguments.

Questions of statutory construction are reviewed by this court de novo.[6] "Statutes governing the revocation of wills are strictly construed."[7] Unless a statute is ambiguous, we attribute the plain meaning to the statute's language.[8] Whether a statute is deemed ambiguous is dependent upon whether the statute's language is susceptible to two or more reasonable interpretations.[9]

NRS 133.110 is unambiguous, and we have previously explained that it "provides for the presumptive revocation of a will if the testator marries after executing his will and his spouse survives him, unless he has provided for the surviving spouse by marriage contract, by provision in the will, or has mentioned her in such a way as to show an intention not to provide for her."[10] "The sole purpose of [NRS 133.110] is to guard against the unintentional disinheritance of the surviving spouse."[11] Thus, the *only evidence* admissible to rebut the presumption of revocation for the purposes of NRS 133.110 is a marriage contract, a provision providing for the spouse in the will, or a provision in the will expressing an intent to not provide for the spouse.[12]

Accordingly, we reject the notion that an amendment to a trust, which provides for the spouse, is admissible to rebut the presumption of a will's revocation.[13] The plain language of NRS 133.110

[6]*Firestone v. State*, 120 Nev. 13, 16, 83 P.3d 279, 281 (2004).

[7]*Todora v. Todora*, 92 Nev. 566, 568, 554 P.2d 738, 739 (1976).

[8]*Firestone*, 120 Nev. at 16, 83 P.3d at 281.

[9]*Clark Cty. Educ. Ass'n v. Clark Cty. Sch. Dist.*, 122 Nev. 337, 345, 131 P.3d 5, 10 (2006).

[10]*Leggett v. Estate of Leggett*, 88 Nev. 140, 143, 494 P.2d 554, 556-57 (1972).

[11]*Id.* at 143, 494 P.2d at 557.

[12]*Id.* at 144, 494 P.2d at 557.

[13]We are cognizant of the fact that modern estate planning regularly utilizes revocable inter vivos trusts with pour-over wills. This approach to estate planning usually results in amendments, if any, being made to the revocable trust

dictates otherwise, and "we will not engraft, by judicial legislation, additional requirements upon the clear and unambiguous provisions of NRS 133.110."[14]

W.R. executed his will before remarrying Maria; consequently, Maria could invoke the protections afforded to a spouse under NRS 133.110.[15] Scott concedes that W.R.'s amendment to the inter vivos trust does not constitute a marriage contract and that no other marriage contract providing for Maria exists.[16] Likewise, it is undisputed that W.R.'s will did not contain a provision providing for Maria or a provision expressing an intent to not provide for her. Thus, the district court properly concluded that W.R.'s will is revoked as to Maria, as none of the three limited exceptions contained in NRS 133.110 is present.[17]

*NRS Title 13 does not incorporate NRS Title 12 with respect to revocation of wills*

Scott argues that NRS Title 13 (trusts) bars Maria's claim as an unintentionally omitted spouse under NRS Title 12 (wills) because NRS 164.005, by reference, contemplates the application of trust amendments in satisfaction of NRS 133.110.[18] We disagree.

NRS 164.005 states:

> When not otherwise inconsistent with the provisions of chapters 162 to 167, inclusive, of NRS, all of the provisions of chapters 132, 153 and 155 of NRS regulating the matters of estates:

---

and not the pour-over will. Given the clear and unambiguous language of NRS 133.110, we caution that a testator must modify his or her will in order to avoid the consequences resulting from the unintentional omission of a surviving spouse pursuant to NRS 133.110.

[14]*Leggett*, 88 Nev. at 143, 494 P.2d at 557.

[15]*Riesterer v. Dietmeier*, 98 Nev. 279, 281, 646 P.2d 551, 552 (1982) ("Certainly, it is conceivable that a surviving former spouse, who has remarried the testator, could suffer unintentional disinheritance.").

[16]*See also* NRS 123A.030 (stating that a premarital agreement is "an agreement between prospective spouses made in contemplation of marriage and to be effective upon marriage").

[17]*Edwards Indus. v. DTE/BTE, Inc.*, 112 Nev. 1025, 1031, 923 P.2d 569, 573 (1996) ("As this court has stated on numerous occasions, findings of fact and conclusions of law, supported by substantial evidence, will not be set aside unless clearly erroneous.").

[18]Scott also argues that the district court erred in not declaring the rights of the parties. Yet, Scott's claim for declaratory relief derives from an entirely separate district court case, which is not on appeal. Consequently, we lack jurisdiction to address this issue.

1. Apply to proceedings relating to trusts, as appropriate; or

2. May be applied to supplement the provisions of chapters 162 to 167, inclusive, of NRS.

We have previously recognized the fundamental rule of statutory construction that "[t]he mention of one thing implies the exclusion of another."[19]

Applying this rule of construction, we conclude that the revocation of a will under NRS 133.110, is unrelated to a trust proceeding. Additionally, NRS 164.005 makes specific mention of NRS Chapters 132, 153, and 155, while making no mention of NRS Chapter 133. By mentioning select chapters, we can imply that the Legislature's exclusion of other chapters was intentional. Nothing in NRS 164.005 or NRS Title 13 contemplates the application of trust amendments in satisfaction of NRS 133.110. Thus, NRS 164.005 has no bearing on the issue of whether W.R.'s will is revoked as to Maria pursuant to NRS 133.110.[20]

*The doctrine of equitable estoppel does not apply*

Since W.R.'s death, Maria has been living in his condominium, with the expenses being paid from the trust in accordance with the amendment giving her a life estate. Because of this, Scott argues that Maria should have been equitably estopped from asserting her intestate succession rights as an unintentionally omitted spouse. We disagree.

We have explained that " '[e]quitable estoppel functions to prevent the assertion of legal rights that in equity and good conscience should not be available due to a party's conduct.' "[21] The doctrine of equitable estoppel has no application here because Maria was granted a life estate in W.R.'s condominium under the amendment to the inter vivos trust. Maria sought an intestate share of W.R.'s estate on the basis that she was an unintentionally omitted spouse

---

[19]*State v. Wyatt*, 84 Nev. 731, 734, 448 P.2d 827, 829 (1968).

[20]Similarly, Scott's reliance on the district court's erroneous determination that the trust was "never effectuated" is misplaced. While the district court incorrectly stated that the trust was never effectuated when it was properly funded, the district court's mistake was collateral to its conclusion that W.R.'s will was revoked as to Maria. Thus, such error was harmless. NRCP 61; *see also United Tungsten v. Corp. Svc.*, 76 Nev. 329, 331-32, 353 P.2d 452, 454 (1960).

[21]*Matter of Harrison Living Trust*, 121 Nev. 217, 223, 112 P.3d 1058, 1061-62 (quoting *Topaz Mutual Co. v. Marsh*, 108 Nev. 845, 853, 839 P.2d 606, 611 (1992)).

under W.R.'s will. Therefore, Maria's interest in the condominium pursuant to the trust agreement is independent of her claim as an unintentionally omitted spouse under W.R.'s will. Having a beneficial interest in the trust does not preclude Maria from also obtaining an interest under the will. Consequently, we reject the notion that Maria's entitlement under the inter vivos trust estops her from asserting her rights under the will.

## CONCLUSION

We conclude that an amendment to an inter vivos trust cannot serve to rebut the presumption that a will is revoked as to an unintentionally omitted spouse. NRS 133.110 unambiguously permits three exceptions to rebut the presumption of revocation, and an amendment to an inter vivos trust is clearly not one of them. We further conclude that the California law referenced in the will and inter vivos trust does not apply here and that NRS 164.005 does not contemplate the application of an inter vivos trust to rebut the unintentional omitted spouse rule of NRS 133.110. Lastly, we conclude that the doctrine of equitable estoppel has no application to the facts of this case. Accordingly, we affirm the district court's order.

MAUPIN and GIBBONS, JJ., concur.