792 F.2d 862
 Fed. Sec. L. Rep. P 92,787, 5 Fed.R.Serv.3d 487
 In re VICTOR TECHNOLOGIES SECURITIES LITIGATION.
Joseph HARRIS, M.D., Ira Markham, M.D., P.A., Profit Sharing
Trust, on behalf of themselves and all others
similarly situated, Plaintiffs-Appellants,
v.
Charles I. PEDDLE, David C. Monroe, et al., Defendants,
and
Victor Technology, Inc., L.F. Rothschild, Unterberg, Towbin,
Bear, Stearns & Co., et al., Defendants-Appellees.
 No. 85-2113.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 16, 1986.
Decided June 19, 1986.
 
 Peter A. Wald and M. Laurence Popofsky, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for L.F. Rothschild, Unterberg, Towbin, Bear, Stearns & Co. and Charterhouse Japhet plc.
 David B. Gold and Paul F. Bennett, San Francisco, Cal., Ronald Litowitz, Bernstein, Litowitz, Berger & Grossman, New York City, John E. Grasberger, Milberg, Weiss, Bershad, Specthrie & Lerach, San Diego, Cal., Leonard Barrack, Barrack, Rodos & Bacine, Philadelphia, Pa., Ernest T. Kaufman, Los Angeles, Cal., Eugene A. Spector, Gross & Sklar, P.C., Philadelphia, Pa., Stanley M. Grossman, Pomerantz, Levy, Haudek, Block & Grossman, Arthur N. Abbey, Abbey & Ellis and Daniel W. Krasner, Wolf, Haldenstein, Adler, Freeman & Herz, New York City, for plaintiffs-appellants.
 Appeal from the United States District Court for the Northern District of California.
 Before SNEED, ANDERSON, and POOLE, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 This is an interlocutory appeal from a district court order determining the procedures the plaintiffs in this class action must follow to give notice of the action to absent members of the class. We find that jurisdiction over the appeal exists and affirm the district court order.
 
 I.
 FACTS
 
 2
 The plaintiffs bought certain Victor Technologies (VT) securities during 1983. They claim that VT and its underwriters committed serious securities laws violations in the offering of these securities. The merits of the lawsuit are irrelevant to this appeal, which deals only with the class notice procedures.
 
 
 3
 Most of the securities in question were bought through brokers. In accordance with normal business practices, such securities are held in the name of the broker. The broker, then, is the "record owner" or the "street name"; only the broker's name appears on VT's records. The actual owner is usually referred to as the "beneficial owner." The beneficial owners have an interest in the lawsuit; the object of notification procedures is to notify them.
 
 
 4
 To provide notice to the absent members of the class, the plaintiffs offered to draft and print the notice, mail it to all record owners, and provide postage-paid copies of the notice to all record owners to enable the record owners to forward the notice to the beneficial owners of the stock. The plaintiffs also agreed to publish the notice in the Wall Street Journal.
 
 
 5
 The defendants introduced evidence, which the district court found credible, that brokerage houses, as a matter of business practice, often do not forward such notices unless they also are reimbursed for the administrative costs of searching their records to find the names and addresses of the beneficial owners and for mailing the notices.
 
 
 6
 Relying on this evidence, Judge Peckham entered a class notice order that requires the plaintiffs to offer to reimburse the record owners for the costs of forwarding the notice, 102 F.R.D. 53. The plaintiffs appealed this order in a timely manner. A motions panel referred to the merits panel the question of appellate jurisdiction under 28 U.S.C. Sec. 1291 and Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).
 
 II.
 JURISDICTION
 
 7
 28 U.S.C. Sec. 1291 grants the courts of appeals jurisdiction over final judgments of the district courts. The district court's order governing class notice procedures clearly does not dispose of this litigation. It is, therefore, not a final judgment in the classic sense. It does, however, come within the collateral order rule established in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (finding jurisdiction over an appeal from a district court order refusing to order plaintiffs to post security before proceeding to trial).
 
 
 8
 The Supreme Court has addressed the application of the Cohen rule to class actions three times. First, in Eisen v. Carlisle & Jacquelin (Eisen IV), 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), the Court held that it had jurisdiction over an appeal from an order allocating a portion of the cost of class notice to the defendants, see id. at 169-72, 94 S.Ct. at 2148-50. Second, in Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978), the Court, relying on Eisen IV, held that it had jurisdiction over an appeal from an order requiring class action defendants to compile a list of the names of the members of the plaintiff class and to bear a portion of the costs of compilation, see id. at 347 n. 8, 98 S.Ct. at 2387 n. 8. Finally, in Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), the Court refused to review an order denying class certification. Of these three cases, Oppenheimer is obviously the one most similar to the present situation.
 
 
 9
 Jurisdiction in this case is supported by these cases and by an independent review of the factors of the Cohen doctrine. As to the Supreme Court precedent, the defendants argue that Eisen and Oppenheimerare distinguishable because they were simple cost allocation orders. We disagree. Although Eisen IV was indeed a cost-allocation case, Oppenheimer was somewhat more complicated. That case examined a district court order requiring class action defendants to compile a list of the plaintiff class at defendants' expense. The Court did not limit its jurisdiction to the requirement that the defendants pay for compilation of the list; it also discussed the standards that a district court should use to set procedures for identifying and notifying members of a class. See Oppenheimer, 437 U.S. at 350-56, 98 S.Ct. at 2389-92. That portion of the order is basically indistinguishable from the order here. Oppenheimer strongly supports a holding of jurisdiction.
 
 
 10
 Cohen itself favors the same result. Under Cohen, we look to the following four considerations: the finality of the decision of the district court on the question at hand; the separability of the question; the prospect of irreparable injury if review is denied; and the importance of the legal question. See, e.g., Richardson-Merrell, Inc. v. Koller, --- U.S. ----, 105 S.Ct. 2757, 2761, 86 L.Ed.2d 340 (1985).
 
 
 11
 Turning to finality, the defendants argue that the district court's order is not conclusive enough to merit interlocutory review. They point out that Judge Peckham's order allows the plaintiffs to seek modification of the notice procedures if the costs threaten to overwhelm them. This observation misses the mark. The district court has conclusively rejected the plaintiffs' position that they need only send the notices to the record owners. It is unlikely that the district court will alter that position unless and until the plaintiffs have spent a very large amount of money in compliance with the district court's current order.
 
 
 12
 There can be little dispute that the order is separable from the merits. The record does not reveal the precise theory upon which the plaintiffs seek recovery. Analysis of the class notice order thus is not entangled in the merits of the action.
 
 
 13
 As to irreparable injury, the plaintiffs would sustain such injury if review were denied. Review of their contention after a final judgment probably would be substantially ineffective. The district court's present order will require the plaintiffs to pay money to a number of third parties not before the district court. It is by no means clear that the plaintiffs could recover that money from the brokerage houses if an appellate court subsequently decided that the payments had not been necessary. In any event, recovery would probably be expensive and time-consuming. In these circumstances, we are inclined to accept an appeal from the present order.
 
 
 14
 Despite the defendants' effort to paint the issue in this case as a fact-laden issue not worthy of interlocutory review, the case does raise an important legal issue. It is true that analysis of this case does indeed depend on the actual business practices of the securities industry. Nevertheless, the problem this case poses is not unusual. Considering the number of class actions alleging violations of securities laws, it is likely to be of great importance to litigants and stockholders throughout the country.
 
 
 15
 We hold, therefore, that we have jurisdiction over this appeal.
 
 III.
 STANDARD OF REVIEW
 
 16
 This case presents both legal and factual issues. Obviously district courts must have broad discretion, resting on the specific facts of each case, in framing procedures for class actions under Fed.R.Civ.P. 23. But that discretion is bounded by the meaning of the Supreme Court's decisions in Eisen and Oppenheimer. Because decision of this case depends largely on our interpretation of those cases, our review is de novo.
 
 IV.
 THE MERITS
 
 17
 The dispute between the parties is quite narrow. The plaintiffs, as already indicated, are quite willing to pay all the costs associated with drafting the notice and mailing it to the record owners of the stock. In addition, they are willing to provide the record owners with enough postage-paid copies of the notice for all the beneficial owners. But the plaintiffs do not want to pay the record owners the administrative costs that will be incurred in forwarding the notices to the beneficial owners. The plaintiffs argue, first, that the record owners have a duty to forward the notice, and, second, that the duty excuses the plaintiffs from reimbursing the record owners for their expenditures. The defendants have established that, as a matter of business practice and without regard to any legal duties, brokerage houses often do not forward such notices unless they are reimbursed.
 
 
 18
 We agree with the district court that the existence of any such duty on the part of brokerage houses is irrelevant. We must decide only the question of what notice is reasonably certain to inform the absent members of the plaintiff class.
 
 
 19
 The most prominent Supreme Court case discussing notice procedures in class actions is Eisen v. Carlisle & Jacquelin (Eisen IV), 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). That case involved claims by a class of odd-lot traders on the New York Stock Exchange that they had been overcharged for the administrative costs of their purchases. The Court addressed the questions (1) what would be the appropriate type of notice, and (2) who should bear the cost of that notice.
 
 
 20
 The trial court in Eisen had concluded that it would have been unduly expensive to require individual notice to the more than two million class members who could be identified with reasonable effort. The Supreme Court firmly disagreed. Quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), the Eisen Court stated:
 
 
 21
 "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected."
 
 
 22
 Eisen IV, 417 U.S. at 174, 94 S.Ct. at 2151 (our emphasis).
 
 
 23
 The Court's discussion of the cost issue was more summary: "In the absence of any support under Rule 23, [the plaintiff's] effort to impose the cost of notice on respondents must fail. The usual rule is that a plaintiff must initially bear the cost of notice to the class." Id. at 178, 94 S.Ct. at 2153.
 
 
 24
 In Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978), the Court discussed the circumstances under which class-action defendants could be ordered to assist in identification of the class and the conditions under which class-action defendants could be required to bear the costs of such assistance.
 
 
 25
 The Court examined the power of a district court to order class-action defendants to assist in compiling a list of members of the plaintiff class. Rejecting the Second Circuit's approach, the Court found power for such an order, not in the discovery rules, but in Fed.R.Civ.P. 23. See id. at 349-56, 98 S.Ct. at 2388-92. Proceeding to the cost issue, the Court held that the district court had abused its discretion in requiring defendants to bear the expenses of assisting in the compilation of names. See id. at 359-63, 98 S.Ct. at 2393-96. The Court stated: "As the expense ... would be no greater for [the plaintiffs], who seek the information, than for [the defendants], [the plaintiffs] should bear the expense." Id. at 360, 98 S.Ct. at 2394.
 
 
 26
 The case before us differs markedly from either Eisen IV or Oppenheimer. Here, the plaintiffs are not trying to force the defendants to bear part of the financial burden of their case. Instead, the plaintiffs argue that third parties must bear this burden.
 
 
 27
 Our response to this argument focuses on the issue of how much notice absent members of the class should receive. The Supreme Court's discussion in Eisen IV is quite instructive; appropriate notice would " 'be such as one desirous of actually informing the absentee might reasonably adopt.' " 417 U.S. at 174, 94 S.Ct. at 2151 (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). As the essentially undisputed facts demonstrate, notice sent to the record owners, accompanied by a request to forward, but refusing to compensate the record owner, is not "reasonably certain to inform those affected." See id. The plaintiffs do not argue that it would be unreasonably expensive to pay the brokerage houses to forward the notices. Instead, they argue that, because the brokerage houses are under a duty imposed by state law to forward the notices, the plaintiffs need not offer compensation, without regard to the business practices of the brokerage houses.
 
 
 28
 The only circuit court[1] that has addressed this argument has squarely rejected it. As that court has stated, "[N]o amount of argument that the brokerage houses may or may not be under some kind of duty to forward the notices can relieve the plaintiff himself of the responsibility of notifying the members of the class, as Eisen IV requires him to do." Gold v. Ernst & Ernst (In re Franklin National Bank Securities Litigation), 574 F.2d 662, 670 (2d Cir.1978), modified on other grounds after Oppenheimer, 599 F.2d 1109 (2d Cir.1979).[2]
 
 
 29
 We agree. Eisen IV and Oppenheimer require that we focus on the effectiveness of notice. Faced with the district court's finding that the only way to ensure actual notification is to require the plaintiffs to pay all costs of such notification, our task is easy. Because the plaintiffs cannot dispute that finding, and because the Supreme Court has clearly required plaintiffs to provide notice "reasonably certain to inform those affected," Eisen IV, 417 U.S. at 174, 94 S.Ct. at 2151, we think the district court's order is appropriate. Because the only effective means of notice requires the plaintiffs to pay in advance, we affirm.
 
 
 30
 AFFIRMED.
 
 
 
 [1]
 The plaintiffs rely on two other circuit court decisions, Phillips v. Clark (In re Four Seasons Securities Laws Litigation), 525 F.2d 500 (10th Cir.1975), and In re National Student Marketing Litigation v. Barnes Plaintiffs, 530 F.2d 1012 (D.C.Cir.1976). Both cases are plainly irrelevant; they present attempts by class-action plaintiffs to escape the binding effect of class actions, even though they received actual notice of the actions. In this case, the panel must decide how best to get notice to the plaintiffs not before the court
 
 
 [2]
 The plaintiffs attempt to undercut the persuasive force of Franklin by reference to the Second Circuit's modification of Franklin after Oppenheimer. We reject this argument. As we read the latter opinion, the modification rested not on Oppenheimer, but on factual developments that complicated identification of the members of the plaintiff class. See Franklin, 599 F.2d at 1110-11