**Joy SILBER, on behalf of herself and all others similarly situated, Plaintiffs–Appellees,**

**and**

**Arthur P. Argyris, Plaintiff–Appellant,**

v.

**Stuart P. MABON; Dundas I. Flaherty; Eugene F. Hovanec; Ericson M. Dunstan; Edwin P. Heacox and Micropolis Corporation, Defendants–Appellees.**

No. 91–55000.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 7, 1991.

Decided Feb. 24, 1992.

Lionel Z. Glancy, Beverly Hills, Cal., for plaintiff-appellant.

Michael S. Glassman, Clemens, Glassman and Clemens, Los Angeles, Cal., for plaintiffs-appellees.

Nancy G. Scheurwater, Latham & Watkins, Los Angeles, Cal., for defendants-appellees.

Before SNEED, BEEZER and TROTT, Circuit Judges.

SNEED, Circuit Judge:

This case involves appellant Arthur P. Argyris's attempt to exclude himself from the settlement of a Fed.R.Civ.P. 23(b)(3) securities class action for money damages. Appellant argues that the notice procedures approved by the district court violated his due process rights, and that, in any event, the district court abused its discretion by refusing to allow appellant to opt out of the settlement *after* the original opt-out deadline had passed. We agree that the notice procedures employed below were constitutionally deficient. We therefore vacate the settlement and remand this case back to the district court. We do not reach the abuse of discretion question.

## I.

## FACTS AND PROCEEDINGS BELOW

In January of 1989, Plaintiff–Appellee Joy Silber commenced this action on behalf of a class of purchasers of Micropolis Corporation's common stock. She alleged that the corporation issued a series of fraudulent public statements in violation of federal and state securities laws which caused the stock to trade at artificially high levels. In July of 1990, Defendant–Appellee Micropolis and the class agreed to a settlement of one million dollars. The district court conditionally certified a consent order approving the settlement on July 20.

The consent order contained provisions meant to satisfy the procedural requirements set forth in Fed.R.Civ.P. 23(c)(2).[1] In particular, it commanded that all "identified class members" be notified by first

---

1. Fed.R.Civ.P. 23(c)(2) provides:

In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will ex-

clude the member from the class if the member so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if the member desires, enter an appearance through counsel.

class mail of the proposed settlement and their right to opt out. The consent order also set a hearing where any class member could raise objections to the proposed settlement. On August 1, notice was mailed to the 1001 Micropolis stock owners listed on the corporate transfer records for the appropriate class period. The opt-out deadline was September 25, 1990, and the hearing date was October 15, 1990. Both dates were reflected in the notice.

Also pursuant to the consent decree, the mailed notice contained special instructions to "Banks, Brokers, and other Nominees." These instructions were meant to ensure that notice of the class action and settlement would reach what are known as the "beneficial owners" of Micropolis stock. Under common industry practice, most publicly traded stock is held in the "street name" of brokerage houses for the benefit of their customers. Only brokerage houses or other "record owners" appear on official corporate transfer records. The actual interest in the stock (and consequently, the interest in any lawsuit relating to the stock) is that of the beneficial owner.

The special instructions consisted of two provisions. First, the notice "requested" that street name purchasers of Micropolis forward "the name and last known address of each ... person or organization for whom or which you purchased such stock" to the notice administrator, who in turn was to "cause copies of [the] Notice to be forwarded to each beneficial owner so designated." Alternatively, the notice advised that street name holders could request copies of the notice for forwarding to beneficial owners directly.

Appellant was a beneficial owner of Micropolis common stock. PaineWebber, Inc., appellant's stockbroker, was the record owner of appellant's stock interest.

At the October 15 hearing, appellant appeared in the district court for the first time and moved to extend the opt-out deadline so that he could exclude himself from the action and pursue his individual claims.[2]

Appellant asserted that he did not receive notice until after the September 25 opt-out deadline and was therefore unable to return his opt-out notification to the court in time. The parties disputed the reason for the breakdown in notice.

Appellant first sought discretionary relief from the district court's opt-out deadline under Fed.R.Civ.P. 6(b)(2) and 60(b)(1). When it became apparent that the district court was unwilling to grant the sought-after relief, appellant proceeded to attack the sufficiency of the notice procedures on constitutional grounds. The district court denied appellant's motion on both counts, and ruled that the fault for appellant's late receipt of notice was with PaineWebber. This appeal followed. Before reaching the merits of appellant's claim, however, we are confronted with an objection to appellant's standing to press portions of this appeal.

## II.

## STANDING

■ Defendant–Appellee Micropolis argues that appellant only has standing to appeal the discretionary refusal to extend the opt-out deadline, but that appellant does not have standing to challenge the notice procedures themselves. We disagree.

The October 15 hearing in the district court was a standard Rule 23(c)(2)(C) hearing. The avowed purpose of such hearings is to give unnamed class members an opportunity to be heard in court. Typically, unnamed members appear to contest the propriety of the class action mechanism, the fairness of the settlement or disposition on the merits, or the adequacy of class representation.

Here, appellant found himself in an atypical posture. He alleges that he received notice too late to opt out, as he desired, but in time for the 23(c)(2)(C) hearing. At that juncture, appellant had two options available to him. First, he could have ignored

**2.** Appellant's claims are potentially substantial. They involve almost 70,000 shares of stock and a potential recovery of over $700,000.

the Silber class action entirely and pursued his individual claims through collateral attack in which his only hope of success would be to establish that the notice procedure deprived him of the procedural due process required by the Fourteenth Amendment. However, appellant also had the option of a less drastic measure of seeking discretionary relief from the district court's opt-out deadline. *See In re Gypsum Antitrust Cases,* 565 F.2d 1123, 1127–28 (9th Cir.1977) (discretionary relief from missed opt-out deadlines is available "under Fed. R.Civ.P. 6(b)(2) and 60(b)(1) as well as generally under Rule 23") (citing *Manhattan–Ward, Inc. v. Grinnell Corp.,* 490 F.2d 1183, 1186 (2d Cir.1974)). It was entirely appropriate initially to seek discretionary relief. This is what appellant did.

 The district court, as indicated above, denied appellant discretionary relief. Appellant then took the next step and attacked on due process grounds the notice procedure. Generally, so long as a "class member appears in response to [23(c)(2)(C)] notice and puts forth his objections, he can attack the dismissal or compromise on appeal from the entry of the final judgment." 7B Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 1797 at 360–61 (2d ed. 1986) (footnote omitted). It is true that appellant might have more properly moved the district court for relief from the proceedings pursuant to Fed.R.Civ.P. 60(b)(4) on the grounds that the proposed settlement was void as to him.[3] However, in the context of the October 15 hearing, we find no barrier to construing what was done as in effect a 60(b)(4) motion made pursuant to that provision. There is standing to challenge the adequacy of the notice.[4]

## III.

### NOTICE TO BENEFICIAL OWNERS

The widespread practice of holding securities in street names grew out of a perceived "paperwork crisis" in the securities industry in the 1960s. Using street names "facilitated the prompt handling of a huge volume of transactions on the various exchanges in the buying and selling of securities by investors and speculators." *In re Franklin Nat. Bank Sec. Litig.,* 574 F.2d 662, 673 (2d Cir.1978), *modified on other grounds,* 599 F.2d 1109 (2d Cir.1979). Courts in securities class actions have long recognized that due process requires notice procedures that take into account these industry facts. Thus, the "best notice practicable under the circumstances," the standard required since *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and by the express terms of Rule 23, took shape within the shadow of this industry practice.

Recently this court faced the question of applying that standard in *In re Victor Technologies Sec. Litig.,* 792 F.2d 862 (9th Cir.1986). There we required as a matter of constitutional due process that the class representative not only provide postage-paid notices to brokerage houses for forwarding to beneficial owners, but that the class representative must also *"offer to reimburse the record owners for the costs of forwarding the notice." Id.* at 863 (emphasis supplied). We based our decision on the district court's factual finding in that case that "brokerage houses, as a matter of business practice, often do not forward ... notices unless they also are reimbursed for the administrative costs of searching

---

**3.** As Herbert B. Newberg explains in his treatise on class actions:

> A class member may ... seek relief from judgment after settlement under Rule 60(b)(4), on the ground that the judgment is void as to him or her. Rule 60(b)(4) must be read in conjunction with Rule 23, in order to determine what constitutes a binding judgment for purposes of Rule 23. It is generally acknowledged that the touchstones of due process in the class context are notice and adequacy of representation.

2 Newberg on Class Actions, § 11.61 at 494 (2d ed.1985) [hereinafter Newberg]. Thus, if notice

procedures are deficient as a matter of due process, relief is available under Rule 60(b)(4).

**4.** Defendant–Appellee *Micropolis* raises concerns that a ruling on standing would somehow reach the substantive fairness of the actual settlement. As we understand appellant's position, no challenge is made to the actual settlement terms. Our decision on standing reaches only the constitutional notice question, which *Micropolis correctly points out was the only argument raised below.*

their records to find the names and addresses of the beneficial owners and for mailing the notices." *Id.* We reasoned that for notice to be "reasonably certain to inform those affected," an offer to reimburse brokerage houses must be forthcoming. *Id.* at 866 (quoting *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 174, 94 S.Ct. 2140, 2151, 40 L.Ed.2d 732 (1974)).

The notice sent in this case reveals that the named representative did not offer to reimburse the brokerage houses for search and handling costs associated with forwarding notice. It did not, as *Victor Technologies* requires, offer "to pay in advance." *Id.* Instead, they offered only to send enough notices to the record owners for them to forward,[5] or alternatively, to send the notices themselves upon receipt of a list of names and addresses from the record owners. The question thus becomes: Were such notice procedures enough to satisfy due process and Rule 23? Put another way, was the notice "such as one desirous of actually informing the absentee might reasonably adopt?" *Eisen,* 417 U.S. at 174, 94 S.Ct. at 2151 (quoting *Mullane,* 339 U.S. at 315, 70 S.Ct. at 657).

At the threshold, we confront the district court's finding that the notice was the best practicable under the circumstances. We would be heavily influenced by this finding had the record indicated that search costs of brokerage firms in this case were insignificant. No such finding appears in the record. Nor does a contrary finding exist. We know only that some of these firms forwarded names to the notice administrator and that some requested additional notices.

■ In their brief, class counsel direct us to scholarly material which argues that notice to record owners alone should be sufficient to meet the standards of *Mullane* and *Eisen:* "With the records of most brokerage houses now being computerized, the expense involved in identifying the beneficial owners of any particular stock should

be reduced to a relatively modest sum." 4 Newberg § 22.71 at 139 n. 349. This may very well be true; improvements in technology may have rendered the "pay in advance" notice procedures we required in *Victor Technologies* meaningless for today's securities industry. But no fact developed below supports this conclusion. Indeed, the opposite inference may be drawn. The district court found that PaineWebber was at fault because it received the notice shortly after the August 15 mailing but did nothing with it for over a month. That delay could be attributable to the failure to offer to pay search costs. We simply do not know. A record barren of evidence regarding the effect of an offer to pay search costs cannot support the district court's departure from *Victor Technologies* standards in concluding that the notice provisions employed were the "best practicable."

■ Class counsel argues that the absence of such evidence justifies a departure from *Victor Technologies,* and that consequently, we should defer to the district court's finding of "best practicable notice." We disagree. Both the class representative and the courts have a duty to protect the interests of absent class members. Their absence precludes charging them with deficiencies in the trial court record. *Victor Technologies* recognized that in the securities industry some incentive must be given to record owners to comply with notice procedures intended to protect their beneficial owner customers. Moreover, we held explicitly that whatever fiduciary duty that might exist between record and beneficial owner did not excuse providing appropriate incentives.[6] Yet, without explanation, the class representative and the court departed from the practice approved in *Victor Technologies.* Thus, we must reverse and remand.

■ We remand for two reasons. The first is obvious. Improved technology may have rendered search costs so insignificant as to render the notice given the "best

5. Indeed, the notice did *not* specify that the forms to be forwarded would be postage prepaid.

6. "[N]o amount of argument that the brokerage houses may or may not have been under some

kind of duty to forward the notices can relieve the plaintiff himself of the responsibility of notifying the members of the class, as *Eisen IV* requires him to do." *Victor Technologies,* 792 F.2d at 866 (quoting *In re Franklin,* 574 F.2d at 670).

practicable." In that case the appellant cannot opt out of the settlement. Should it be determined that the standard of *Victor Technologies* continues to control, as we have held it would on the basis of the record before us, the trial court must then fashion a remedy. We cannot do that at this stage of the development of the case. We can only speculate that either allowing the appellant to opt out, or discarding the entire initial notice procedure and proceeding with a second and completely adequate notice procedure, are possible alternatives. Others also may exist.

■ The second reason is that the class representative should have the opportunity, should the facts warrant it, to demonstrate that the appellant actually received notice within a reasonable time to meet the opt-out deadline of September 25, 1990. The record before us does not touch on this issue. While it is true that the issue could have been raised below, the appellees had no incentive to do so in view of the district court's holding with respect to the notice. That may not be the case on remand; it would be unjust for us to foreclose the raising of the issue.

Finally, we do not reach appellant's argument that *Phillips Petroleum v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) renders even the procedures approved in *Victor Technologies* unconstitutional unless there is actual receipt of notice. Suffice it to confine our holding to the more relaxed standard of *Mullane* and *Eisen* as we interpreted those cases here and in *Victor Technologies*. It is possible this litigation might compel us to confront that issue in the future. It does not do so at this time. We decline to anticipate that development.

REVERSED AND REMANDED.